

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Walter C. Woodward, Chairman
Board of Insurance Commissioners
Austin, T e x a s

Dear Sir:

Opinion No. O-1889
Re: Construction of Article 4727,
Revised Civil Statutes of Texas,
1925, and Article 577, Penal Code
of Texas, 1925.

We are in receipt of your request for an opinion on the following questions:

" * * * *

"We are concerned about the admissibility of assets of life insurance companies acquired under the following circumstances; first, should we admit as an asset securities obtained where it appears that the Board of Directors of the Insurance Company is identical with the Board of Directors of the selling corporation, the Board in each instance owning the controlling stock in the two corporations, to-wit: The Insurance Corporation and the Selling Corporation. Second, should such securities so purchased by an insurance corporation be admitted as an asset where it appears that a majority of each Board is identical, the majority owning a controlling interest in both corporations.

"The foregoing questions involve a further construction of Article 4727, Revised Civil Statutes.

"As a concrete illustration of the question which confronts us, the following is typical:

"The controlling stock of Insurance Corporation A is owned by B,C, and D, who constitute its Board of Directors. The controlling stock of corporation E, a finance corporation, is owned by B,C, and D, they being the identical persons who own the controlling stock in Insurance Company A.

"The finance corporation E sells to Insurance Corporation A certain securities owned by it. The question which confronts me is whether or not, under such circumstances and in view of Article 4727, notwithstanding said Article is a prohibition against acts of the directors, officials, agents, etc., should the Board of Insurance Commissioners recognize the securities so purchased as admissible assets?

"In propounding the foregoing questions, I am laboring under the impression that the members of the Board of the Selling Corporation E have a pecuniary interest in the securities sold to Insurance Corporation A, the Directors of which are either identical with the Directors of the Selling Corporation or own and control the majority stock.

"You will note that in my letter to you of October 17th, I requested that you consider whether or not a distinction can or should be made where the officers and directors of the two corporations are identical, and whether or not the officers and directors are not identical, and to consider if there is a distinction to be drawn between instances where the officer or director of both corporations owns the controlling interest in both corporations, or owns the controlling interest in the borrowing corporation.

"  *  *  *  *  ."

Reference is made to Article 4727, Revised Civil Statutes, 1925. We have given most careful con-

sideration and analysis to this civil statute. It is our studied opinion that the prohibition contained therein does not apply to the circumstances you have described. See in this connection Conference Opinion No. 3097 of this department.

Article 4727 and Article 577, Penal Code, 1925, have as their combined objective the prohibition and penalizing of a director and officer or directors and officers of corporations in respect to certain personal acts. Both the prohibition and the penalty apply to individuals. They do not embrace the corporation itself as an entity. The language is clear, unambiguous and not subject to contruction.

The insertion of the provisions concerning policy loans was undoubtedly for the purpose of enabling directors and officers of insurance companies to take advantage of this well-recognized class of loans. It cannot be concluded that it indicates a legislative intent that insurance companies, as well as their individual directors and officers, were within the statutory inhibition.

Article 577, supra, expressly states that "any person violating any provision of this article shall be fined not less than three hundred nor more than one thousand dollars". (Underscoring ours).

The fact that Article 4727 and Article 577 are not applicable does not mean that the Board of Insurance Commissioners is powerless to control the admissibility of assets of life insurance companies acquired under the circumstances outlined in your letter.

Where an insurance company purchases securities from a corporation whose Board of Directors has a membership identical with that of the purchasing insurance Company, the Board of Insurance Commissioners is entitled to be guided by certain fundamental rules of law in determining the admissibility of such securities as assets of the insurance company.

It is too well established to require citation

of authority that officers and especially directors of corporations are fiduciaries. See, however, 2 THOMPSON ON CORPORATIONS, Ch. 49, p. 777 "Duties and Powers of Directors as Fiduciaries"; 2 COUCH ON INSURANCE 1451, § 509a on "Directors"; 26 HARVARD LAW REVIEW 427, "Interlocking Directorates, The Problem and Its Solution"; TRINITY-UNIVERSAL INSURANCE COMPANY ET AL v. MAXRELL ET AL 101 S.W. (2d) 607.

The fact that a part or all of the directors of one contracting corporation are directors of the other contracting corporation affords a ground for subjecting the contract into which they enter to the strictest scrutiny by courts of equity. 2 THOMPSON ON CORPORATIONS 841; 10 TEX. JUR. 959.

The true rule in Texas with respect to contracts between corporations having interlocking directorates or officers in common generally may be found enunciated in CITY NATIONAL BANK vs. MERCHANTS' AND PLANTERS' NATIONAL BANK, 105 S.W. 338 (CCA 1907), to the effect that:

"It is not inherently wrong for two corporations, having all or a part of their controlling officers in common, to contract with each other. Even where a majority or all of the contracting officers of two corporations are common to both, that fact alone does not make a contract between the two corporations, entered into by such contracting officers, absolutely void and incapable of ratification. The current of modern authority holds that the most that can be said against such contracts is that they will be subjected to close judicial scrutiny when questioned at the proper time, and will be set aside upon the appearance of unfairness. But if it should appear, upon investigation, that the contract is fair and there has been no abuse of the trust relation, the contract will be permitted to stand * * * The extent to which the courts will go in refusing to enforce contracts of this kind, as shown by the adjudicated cases, depends in a great measure upon the facts of each particu-

ler case. No inflexible rule has been estab-
lished."

The rule was stated with remarkable clarity
by Mr. Justice Clark, speaking for the United States
Supreme Court in GEDDES vs. ANACONDA COPPER MINING COM-
PANY, 254 U.S. 590, 599, 41 S. Ct. 209, 65 L. Ed. 425,
when he said:

"The relation of directors to corporations
is of such a fiduciary nature that transactions
between boards having common members are regard-
ed as jealously by the law as are personal deal-
ings between a director and his corporation,
and where the fairness of such transactions is
challenged the burden is upon those who would
maintain them to show their entire fairness and
where a sale is involved the full adequacy of
the consideration. Especially is this true
where a common director is dominating in influ-
ence or in character. This court has been con-
sistently emphatic in the application of this
rule, which, it has declared, is founded in
soundest morality, and we now add in the sound-
est business policy."

In commenting on this rule, the United States
Supreme Court in TWIN-LICK OIL COMPANY vs. MARBURY, 91
U.S. 587, 23 L. Ed. 328, said,

" * * * when the lender is a director,
charged with others, with the control and man-
agement of the affairs of the corporation, rep-
resenting, in this regard, the aggregate interest
of all the stockholders, his obligation, if he
becomes a party to a contract with the company,
to candor and fair dealing, is increased in
the precise degree that his representative
character has given him power and control de-
rived from the confidence reposed in him by the
stockholders who appointed him their agent."

In England, the rule is that corporations
having directors in common may not contract. See 2 Thomp-
son Corporations 846. GRANT v. UNITED Etc. RAILROAD CO.,

L. R. 40 Ch. D. 155; ERNEST vs. NICHOLLS, 6 H. L. Cas. 401.

The fundamental principle that contracts between corporations having interlocking or identical directorates should be subjected to the strictest scrutiny is especially applicable where one of the contracting corporations is an insurance company.

Insurance companies are in the nature of public utilities and are subject to more severe governmental regulation than are ordinary companies. GERMAN ALLIANCE INSURANCE COMPANY vs. LEWIS, 233 U.S. 389; O'GORMAN vs. INSURANCE CO., 282 U.S. 251, 51 S. Ct. 130. Because of the tremendous amount of money they must hold and invest for policy holders and the proportionately increased danger of fraud and deception there is need for a more severe rule with respect to this type of corporation.

We quote the language employed by the author of "Interlocking Directorates, The Problem and its Solution" in 26 Harvard Law Review at page 470:

"The important life insurance companies doing business in this country annually receive from their policyholders perhaps more than two thousand million dollars. A very large part of these funds must be, and are, invested by the insurance companies * * * It follows that insurance companies or financial institutions having funds to put out for investment, through their representatives who at the same time are directors of the selling company, find opportunity for investment immediately at hand.

" * * * .

"The forces influencing and dominating boards of directors of corporations engaged in finance, banking, insurance, railroading, and commerce through common or interlocking directorships, restraining and stifling competition and freedom in business, and denying

> equality of opportunity to all entitled there-
> to, abuse and violate the fiduciary relation
> and trust obligation of directors. Some treat-
> ment must be found to cure or destroy the
> evil."

As stated another way in BARNES vs. BROWN, 80
NY 527, 535 (1880):

> "It is against public policy to allow
> persons occupying fiduciary relations to be
> placed in such positions as that there will
> be constant danger of a betrayal of trust by
> the vigorous operation of selfish motives."

We take the liberty to quote again from the
article in 39 H.L.R. (this time at p. 474), which is a
concise statement of our position:

> "The trust relationship existing, there
> should be no doubt of the rule that a director
> should not deal with his corporation in any
> manner in which he is interested, directly or
> indirectly; be the interest in the transaction
> individual or that of another corporation in
> which such director is interested, either as
> officer, stockholder, or director.

> "Though the great weight of authority
> supports the conclusion that contracts made
> by corporations, in which its directors are
> interested, either individually, or through
> their affiliations with other corporations,
> are not void ab initio, but merely voidable,
> yet the rule of law in this respect is such
> that all practical purposes, if the contract
> or transaction be attacked, it will be avoided
> almost as a matter of course, because the
> question of the integrity or the good faith
> of the transaction will not be inquired into.
> The courts will not consider whether or not
> the transaction has been injurious. Indeed,
> they have gone so far as to hold that even
> where it could be affirmatively shown that

the transaction was beneficial to the corporation, yet, the fact of the relationship appearing, the transaction will be set aside as contrary to public policy and good morals. The decisions in this respect are uniform, and the language is strong and unmistakable."

The Board of Insurance Commissioners is given authority to examine insurance companies. Article 4690, Revised Civil Statutes, 1925. Its power of examination extends to the insurance company's "financial condition and its ability to meet its liabilities, as well as its compliance with the laws of Texas affecting the conduct of its business; etc."

Article 4690 provides:

"He (the Chairman of the Board of Insurance Commissioners) may revoke or modify any certificate of authority issued by him or by any predecessor in office when any condition or requirement prescribed by law for granting it no longer exists. He shall give such company at least ten days written notice of his intention to revoke or modify such certificate of authority stating specifically the reasons for the action he proposes to take."

Under the principles of law above set out, the authorities quoted, and its statutory examining power the Board of Insurance Commissioners has the authority to subject to the strictest scrutiny a contract of purchase of securities between a purchasing insurance company and a selling corporation where the Boards of Directors of the two corporations have identical members or an identical controlling majority membership.

The test is the fairness of the contract of purchase to the stockholders and policyholders and the lack of violation of the trust or fiduciary relationship of the directors.

Where the transaction fails to meet the test and to conform to the standards of soundest morality, the Board of Insurance Commissioners under the grant of examining authority conferred in Article 4690, supra

may refuse admissibility as assets of the insurance company securities obtained by purchase from a corporation having an identical Board of Directors.

The same reasoning applies in those cases where the Board of Directors of the purchasing insurance company and the selling corporation have an identical majority controlling element.

The refusal of the Board of Insurance Commissioners to admit certain securities as assets of the insurance company might or might not amount to an impairment of the capital stock of an insurance company under Article 4748, Revised Civil Statutes, 1925. Whether impairment is brought about or not by this action, the authority of the Board of Insurance Commissioners is the same where the transaction between the insurance company and the corporation having common directors does not meet the test of fairness or is a violation of the trust relationship.

In this opinion we are not passing upon the question of whether or not the individual directors in the situation described are guilty of violating Articles 4727 and 577, supra.

Trusting that we have satisfactorily answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By　Dick Stout
Dick Stout
Assistant

DS:ob

APPROVED MAY 16, 1940

ATTORNEY GENERAL OF TEXAS

